848 F.2d 674
 1988-1 Trade Cases 68,013, RICO Bus.Disp.Guide 6939
 MICHAELS BUILDING COMPANY, et al.; Barbara L. Abbe; and
Joseph L. Sigler, etc., Plaintiffs-Appellants,
v.
AMERITRUST COMPANY, N.A., et al.; National City Bank of
Akron, et al.; Centran Bank of Akron, et al.; Bank One of
Akron, N.A., et al.; Harter Bank & Trust Co.; and the
United National Bank & Trust Company, et al., Defendants-Appellees.
 Nos. 86-4148, 86-4149, 87-3157 and 87-3197.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 17, 1988.
Decided May 17, 1988.
 
 Dale A. Bernard, Daniel J. McGown (argued), Alan G. Segedy, Akron, Ohio, for plaintiffs-appellants in Nos. 86-4148 to 86-4151.
 John W. Solomon, Linda B. Kersker, Akron, Ohio, for Phoenix Nat. Bank and D. Jones.
 Richard E. Guster, Douglas L. Talley, George Rooney, Jr. (argued), Roetzel & Andress, Akron, Ohio, for Bank One.
 Sonia C. Vallorz, Roetzel & Andress, Akron, Ohio, for appellee-cross-appellant.
 Dennis M. Kelly (argued), Jeffrey J. Baker, Jones, Day, Reavis & Pogue, Leslee W. Miralke, Matthew R. Goldman, Cleveland, Ohio, for Ameritrust et al.
 Robert J. Hoerner (argued), Stephen Q. Giblin, Cleveland, Ohio, for National City Bank of Akron.
 Dale A. Bernard, Andrew J. Michaels, Daniel J. McGown (argued), Akron, Ohio, for plaintiffs-appellants in Nos. 87-3157 and 87-3197.
 S. Stuart Eilers, Thompson, Hine & Flory, Joseph J. Magri, Cleveland, Ohio, for other appellees.
 Barbara J. Arison, Wm. J. Wallace, Roetzel & Andress, Akron, Ohio, for Soc. Bank of E. Ohio.
 Thomas P. Mulligan, Kathleen B. Burke (argued), Susan Z. Haller, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Centran.
 Edward P. Weber, Jr., Randolph L. Snow (argued), Black, McCuskey, Souers & Arbough, Canton, Ohio, for United Nat. Bank and Trust.
 Before KEITH, MARTIN and RYAN, Circuit Judges.
 KEITH, Circuit Judge.
 
 
 1
 This group of consolidated appeals involved a series of nearly identical rulings by the United States District Court for the Northern District of Ohio in a tetralogy of class actions asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Sherman Act and Ohio law. Appellants challenge three of the district court's rulings: (1) the dismissal of their RICO and state fraud claims with prejudice, pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), for failure adequately to plead circumstances constituting fraud; (2) the dismissal of their Sherman Act claims with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6), for failure adequately to state a claim; and (3) the dismissal of defendant Ameritrust, pursuant to Fed.R.Civ.P. 21, for misjoinder. Final judgments were entered under Fed.R.Civ.P. 54(b), thus conferring appellate jurisdiction upon this court. We agree with appellant that the district court erred in dismissing the fraud and Sherman Act claims, and therefore REVERSE with respect to those issues. We AFFIRM, however, the district court's decision to dismiss the Ameritrust defendants.
 
 I. FACTS
 A. The Michaels Case
 
 2
 On April 30, 1984, plaintiffs-appellants, Michaels Building Company and Michaels Oil and Gas Company ("Michaels"), filed a class action complaint against six different banking groups[1] and fifty unnamed "John Doe" defendants employed by or associated with the banks. Michaels and the defendant banks had entered into certain loan agreements which obligated Michaels to pay an interest rate that was based on each bank's own stated "prime rate." Michaels argues that the term "prime rate" is generally understood to mean the variable rate which banks charge to their preferred commercial borrowers with the highest credit ratings.[2] Michaels claims that the defendant banks fraudulently exacted excessive interest payments by charging interest at an arbitrarily established "prime rate" in excess of the rate which the banks actually charged to their best commercial customers.
 
 
 3
 Michaels' complaint consisted of seven counts alleging that the defendants had defrauded the class borrowers in violation of state law and the mail fraud provision of RICO, 18 U.S.C. Secs. 1961 et seq.[3] Michaels also served extensive interrogatories and requests for documents upon each defendant bank. The banks each responded by filing motions to dismiss under Fed.R.Civ.P. 9(b), 11 and 12(b)(6) on the bases that Michaels' complaint failed to state the circumstances constituting fraud with particularity.[4] Michaels rejoined that Rule 9(b) requires only "notice" pleading, and that Michaels would be able to establish the factual bases for their fraud claims after discovery had been taken.
 
 
 4
 The court took the motions under advisement, and stayed discovery. On December 27, 1985, the court issued a RICO Case Standing Order. In part, the Order directed Michaels to:
 
 
 5
 5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:
 
 
 6
 * * *
 
 
 7
 b. Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding the predicate acts;
 
 
 8
 c. If the RICO claim is based on the predicate offenses of ... mail fraud ... the "circumstances constituting fraud or mistake shall be stated in particularity." Fed.R.Civ.P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made ...
 
 
 9
 Joint Appendix ("J.A.") at tab 15, p. 2.
 
 
 10
 On January 15, 1986, Michaels filed a RICO Case Statement, and six days later, a "Supplemental" RICO Case Statement. Michaels' first Statement responded that:
 
 
 11
 (b) First Count:
 
 
 12
 During the six year period preceding the commencement of this action, Defendant Banks and Defendant Bank Holding Companies, despite contractual agreements with plaintiffs and the class providing that interest would be charged based on the prevailing "prime rate," i.e., the rate charged to "best commercial borrowers" or "best and most credit worthy customers," submitted to plaintiffs and class, through the mails, false and fraudulent statements charging interest in excess of the agreed upon rate.
 
 
 13
 J.A. at tab 14, p. 4.
 
 
 14
 Following a hearing on the motions in March, 1986, Michaels submitted an amended complaint. The complaint detailed all of Michaels' own "prime plus" loans, but did not identify the names of favored commercial borrowers who received loans during the period in question from any defendant bank at less than the bank's prevailing prime rate. The defendants renewed their motions to dismiss under Rules 9(b) and 12(b)(6).
 
 
 15
 At its second hearing on defendants' motions to dismiss, the court asked Michaels' counsel what facts the plaintiffs had "to tell the defendants that there may be some people out there that got a different treatment than [Michaels]." Counsel responded: "To be very blunt, as your Honor recognized, we cannot put ourselves at this juncture into the banks and have their loan records. We have had no borrowers come to us and tell us 'Guess what. We are borrowing below the recorded prime rate.' " J.A. at tab 26, p. 7. In its September 15, 1986 Order, the court dismissed Michaels' claims with prejudice, finding that:
 
 
 16
 [T]he plaintiffs have failed to meet the specificity requirement of Rule 9(b) as to Counts I and V, which alleged misrepresentations concerning the "prime rate" used to calculate the interest rate on plaintiffs' loans. Even after the filing of a complaint, an amended complaint, a RICO case statement and an amended RICO case statement, the plaintiffs have been unable to identify any rate, loan or borrower to support their claim that they were charged interest based on a false or artificial prime rate. At the September 5, 1986 hearing, plaintiffs still were unable to identify this information. Plaintiffs have had sufficient opportunity to plead the factual basis for believing a fraud occurred as required by Rule 9(b), but have failed to do so. Thus, Counts I and V must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 9(b) and 12(b)(6).
 
 
 17
 District Court Order, J.A. at tab 3, p. 8. Final judgment was entered under Rule 54(b), and Michaels now appeals.
 
 
 18
 Defendant Ameritrust moved for dismissal pursuant to Rule 21 based on a misjoinder of parties. Finding that Michaels' remaining federal claims against the two defendants did not arise "out of the same transaction or occurrence or series of transactions or occurrences," the court dismissed Michaels' claims against Ameritrust without prejudice. District Court Order, J.A. at tab 4. Michaels has also appealed this ruling.
 
 B. The Abbe Case
 
 19
 On September 14, 1984, four and one-half months after filing the class complaint in Michaels, Michaels' counsel filed a separate class complaint on behalf of plaintiffs-appellants Lowell Abbe, Barbara Abbe, and all other persons similarly situated. The complaint named as defendants Bank One (also named as a defendant in Michaels ),[5] Centran Bank of Ohio (also named as a defendant in Michaels ), Harter Bank and Trust Company, and thirty unnamed "John Does." The complaint contained the same RICO and state fraud claims as in Michaels, in addition to a Sherman Act antitrust claim, pursuant to 15 U.S.C. Sec. 1, et seq. The Abbe antitrust claim alleged that the defendant banks and certain unnamed co-conspirators engaged in a conspiracy to fix interest rates in violation of the Sherman Act. The Abbe plaintiffs also served discovery requests upon all of the defendants. The defendants moved to dismiss the claims under Rules 9(b), 11, 12(b)(1), and 12(b)(6). As it did in Michaels, the court stayed the Abbes' discovery request pending resolution of defendants' motions.
 
 
 20
 On February 21, 1985, the Abbes filed an amended complaint. The allegations in the filings in Michaels were reiterated in the Abbe complaint. On December 27, 1985, the same day that it issued its RICO Case Standing Order in Michaels, the court issued a similar order in Abbe. The Abbe order, like the Michaels order, required that the "circumstances constituting fraud or mistake ... be stated in particularity." The Abbes filed a RICO statement similar to that in Michaels. The defendants revived their motion to dismiss. The court thereafter dismissed the Abbes' RICO and fraud claims, pursuant to Rules 9(b) and 12(b)(6), and their Sherman Act claim, pursuant to Rule 12(b)(6). Barbara Abbe now appeals jointly with the Michaels appellants.
 
 C. The Sigler Case
 
 21
 On October 15, 1985, Joseph L. Sigler, represented by the same counsel who represented both the Michaels and Abbe plaintiffs, filed a class action against United National Bank & Trust Co. and UNB Corporation, twenty-six named individuals who are either directors, officers or agents of United National, and twenty-one unnamed "John Does." The complaint set out the same "prime rate" RICO and state fraud claims previously asserted in Michaels and Abbe. In addition, Sigler included an antitrust claim identical to that alleged by the Abbe plaintiffs.
 
 
 22
 On December 27, 1985, the court filed a RICO Case Standing Order in Sigler which contained the same directives as the orders contemporaneously issued in Michaels and Abbe. On January 14, 1986, the defendants moved for dismissal pursuant to Rules 9(b), 11 and 12(b)(6). On January 21, 1986, Sigler filed his RICO Case Statement. Sigler never amended his complaint. Approximately one year after Sigler originally filed his complaint, on February 19, 1987, the district court dismissed his claims with prejudice. Sigler now appeals jointly with the Michaels and Abbe appellants.[6]
 
 II. ANALYSIS
 A. Rule 9(b) Claims
 
 23
 A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud "with particularity," a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a "short and plain statement of the claim," and calls for "simple, concise, and direct" allegations.[7] Indeed, Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony. See, e.g., Credit & Finance Corp., Ltd. v. Warner & Swasey Co., 638 F.2d 563, 566 (2d Cir.1981). "Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1298, at 407 (1969).
 
 
 24
 Given this backdrop admonition of simplicity in pleading, we note that the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. See, e.g., Ross v. A.H. Robins Co., Inc., 607 F.2d 545, 557 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); Denny v. Barber, 576 F.2d 465, 469 (2d Cir.1978). We are convinced that plaintiffs' amended complaint is sufficiently detailed to satisfy the notice requirement. The particular fraud count specifies the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud,[8] and the injury resulting from the fraud. In addition, the plaintiffs identified the fraudulent loan documents and attached copies of them to the complaint.
 
 
 25
 Indeed, the only fact that plaintiffs omit from their complaint are the identities of borrowers who received sub-prime loans[9]--information which lies in the hands of the defendant. Courts have held that the rule may be relaxed where information is only within the opposing party's knowledge. See e.g., 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil Sec. 1298, at 416 n. 94 (1969); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir.1987); Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir.1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control. For example, the courts in Eaby v. Richmond, 561 F.Supp. 131, 137 (E.D.Pa.1983), and in Chambers Development Co. v. Browning-Ferris Industries, 590 F.Supp. 1528, 1539 (W.D.Pa.1984), did not grant motions to dismiss under Rule 9(b) because the plaintiffs claimed that they could not plead a RICO complaint with specificity since the facts underlying their claims were particularly within defendants' knowledge. Those courts decided to grant plaintiffs an opportunity to take discovery for sixty days and to file an amended complaint shortly thereafter. See also Jordan v. Global Natural Resources, Inc., 564 F.Supp. 59, 69 (S.D.Ohio 1983); Imperial Supply Co., Inc. v. Northern Ohio Bank, 430 F.Supp. 339, 360-61 (N.D.Ohio 1976) (where discovery stayed and information in control of defendants, dismissal of claims improper). It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim. Plaintiffs in this case have met that requirement.
 
 
 26
 The court below wrote that Rule 9(b) embodies a "harsh reality": the particularity requirement may prevent courts, "in some instances, from reaching the truth in the cases before them." District Court Opinion, J.A. at tab 3, p. 6. We do not believe that the rulemakers intended that harsh result. If plaintiffs' claims are groundless, that conclusion will emerge as discovery proceeds. Even so, it is important to stress that the information "missing" from plaintiffs' complaint in this case is far outweighed by the sufficiency of the description of the claim against the defendants. Discovery will therefore not be a "fishing expedition" for an otherwise claimless plaintiff. We are reluctant to amputate plaintiffs' claim as long as there is a reasonable basis upon which to make out a cause of action from the events narrated in the complaint.
 
 
 27
 We emphasize, however, that there must be a reasonable basis for a plaintiff's complaint. Attorneys who take advantage of the liberal pleading provisions of Rule 8 by commencing a lawsuit in a desperate attempt to unearth a cause of action through discovery must be checked by the ethics provisions of Fed.R.Civ.P. 11:
 
 
 28
 The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose ...
 
 
 29
 In this case, therefore, after discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the spectre of Rule 11 sanctions should guide the actions of plaintiffs' counsel.
 
 
 30
 We are cognizant of the dilemma of the trial judge who struggles to sketch lines separating what are strike suits and illegitimate complaints from claims which bear more credibility. We believe that in this case, however, the court below was too exacting. At the hearing on the motion to dismiss the complaint for lack of specificity, plaintiff's counsel acknowledged that he was unable to provide the names of favored borrowers, but urged that he not be shut out for that reason. We agree. We will not demand clairvoyance from pleaders. Corporate entities who jealously guard the names of their clients or other information, as they should, would be forever victorious in their motions to dismiss under Rule 9(b) if courts demanded the level of specificity at issue in this stage of a case. We are reluctant to punish the plaintiffs for their ignorance of a specific factual detail, as long as defendants have adequate notice of why they are being sued and are capable of preparing a responsive pleading. If some limited discovery has been taken (under a protective order, if necessary), and the district court learns that in fact plaintiffs are still unable to produce the names of favored borrowers, then the action may properly be disposed of. Until that time, however, we believe that it would be precipitous to dismiss the plaintiffs' RICO and fraud claims.
 
 
 31
 Accordingly, we reverse the district court on this first issue.
 
 B. Anti-trust Claims
 
 32
 Plaintiffs also urge that the court acted rashly in dismissing with prejudice their claims based upon the Sherman Act, 15 U.S.C. Sec. 1. The district court dismissed the antitrust claims pursuant to Fed.R.Civ.P. 12(b)(6). We agree with the plaintiffs.
 
 
 33
 In an antitrust case, "where 'the proof is largely in the hands of the alleged conspirators,' Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Hospital Building Company v. Trustees of Rex Hospital, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Thus, the test for the sufficiency of a complaint in an antitrust action is more liberal than the test for claims of fraud under Rule 9(b), and is guided by the "short, plain and concise" language in Rule 8.
 
 
 34
 Defendant complains that plaintiff failed to name another entity, besides the defendants, that engaged in the alleged conspiracy; failed to provide specific dates of the alleged conspiracy; and failed to enumerate the specific acts which would have culminated in the alleged conspiracy. We find, however, that plaintiffs' claim was not simply a bare legal conclusion. Plaintiffs' antitrust count alleged that the defendants in the case were co-conspirators in an unlawful combination to restrain interstate trade and commerce; that there was an agreement to fix the interest rate charged by lending institutions; that the interest rate held out by the co-conspirators to be their "prime rate" was not a legitimate one and was based upon the conspiracy; that the effect of the conspiracy was to fix prices at noncompetitive levels, to suppress price competition between lending institutions, and to deny plaintiffs the opportunity of obtaining loans in a competitive market; that the plaintiffs had no knowledge of the conspiracy until the time the complaint was filed; that plaintiffs are unable to obtain more information about the conspiracy because of the defendants' scheme to avoid detection and conceal the conspiracy; and that the plaintiffs paid a higher interest rate to the defendant banks then they would otherwise have had to pay under natural conditions of competition. We find that the above information was adequate to provide notice of the claim to defendants, and was amply sufficient to survive a Rule 12(b)(6) motion.
 
 
 35
 We therefore reverse the district court on this second issue.
 
 C. Joinder of the Ameritrust Defendants
 
 36
 On October 1, 1986, the district court found that the claims against the Ameritrust defendants did not arise from the same "transaction, occurrence or series of transactions or occurrences" as required by Fed.R.Civ.P. 20(a). The district court concluded that the Ameritrust defendants were improperly joined, and it dropped them as parties without prejudice as permitted under Fed.R.Civ.P. 21. Rule 20(a) provides:
 
 
 37
 All persons ... may be joined in one action as defendants if there is asserted against them any right to relief jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.
 
 
 38
 As Judge Krenzler found, the loan transaction forming the basis for the claims against the Ameritrust defendants was wholly unrelated to other matters at issue in this case. The one Ameritrust-related loan made to Michaels Building Company has no relation to the loans made by the other defendants. The various transactions, as Judge Krenzler wrote, "involve different banks, different contracts and different terms." Moreover, the Ameritrust loan document contains an entirely different representation as to its interest rate than the loan documents of the other defendants.[10] Variation in loan policies is a further reason to disallow joinder. E.g., Cohen v. Dist. of Columbia National Bank, 59 F.R.D. 84, 88 (D.D.C.1972).
 
 
 39
 The manner in which a trial court handles misjoinder lies within that court's sound discretion. See, e.g., 3A J. Moore and J. Lucas, Moore's Federal Practice p 21.03 at 21-26 (1986); Fed.R.Civ.P. 21. As this court has held, dismissal of claims against misjoined parties is appropriate. Michigan Savings & Loan League v. Francis, 683 F.2d 957, 962 (6th Cir.1982). We conclude that the dismissal of the Ameritrust defendants was not an abuse of discretion.
 
 III. CONCLUSION
 
 40
 For the foregoing reasons, we REVERSE the district court's dismissal of plaintiffs' fraud and antitrust claims under Rule 9(b) and 12(b)(6), and AFFIRM the dismissal of the Ameritrust defendants.
 
 
 
 [1]
 The six defendant banking groups were: (1) Ameritrust Company, N.A. and Ameritrust Corporation; (2) Bank One, Akron, N.A. and Bank One Corporation; (3) Centran Bank of Akron and Centran Corporation; (4) First National Bank of Ohio and First Bancorporation of Ohio; (5) National City Bank of Akron and National City Company; and (6) Old Phoenix National Bank of Medina, Ohio. In early 1988, several appeals and cross-appeals were voluntarily dismissed or withdrawn: (1) the cross-appeals by Old Phoenix, Bank One of Akron, Bank One of Cleveland, and Bank One Corporation were dismissed; (2) plaintiff Theodore Goumas withdrew his appeal as to all defendants; and (3) the Michaels plaintiffs withdrew their appeal as to First National Bank, First Bancorporation, Old Phoenix National Bank, Centran, Centran Corporation and related individuals. The appeal is still proceeding against the Ameritrust group, the National City group, and the Bank One group
 
 
 [2]
 Bank One and Ameritrust Co. of Medina County were the only banks clearly to define "prime rate" in their loan agreements with Michaels. Bank One defined "prime lending rate" as "the rate announced from time to time by BANK ONE for 90 day loans to its commercial borrowers of the highest credit standing." Ameritrust Company of Medina County's definition was similar: prime rate is "the best rate of interest generally charged by Bank for unsecured short-term commercial loans to the most credit-worthy commercial borrowers...." Other standard definitions are consistent with those of Bank One and Ameritrust. For example, the Living Webster Encyclopedia Dictionary of the English Language (1971) defines prime rate as "[t]he minimum bank loan interest, usually offered exclusively to large commercial borrowers." The American Heritage Dictionary of the English Language (1981) defines prime rate as "[t]he lowest rate of interest on bank loans at any given time and place, offered to preferred borrowers."
 
 
 [3]
 "Racketeering activity" includes any act indictable under 18 U.S.C. Sec. 1341, the federal mail fraud provision. 18 U.S.C. Sec. 1961(1). Section 1341 proscribes the use of postal service facilities to obtain money by means of false or fraudulent pretenses
 
 
 [4]
 Fed.R.Civ.P. 9(b) provides:
 (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally.
 
 
 [5]
 In addition to Bank One Corporation and Bank One, Akron, N.A. (a subsidiary of Bank One Corporation), both named in Michaels, the Abbe complaint named Bank One Cleveland, N.A., another subsidiary of Bank One Corporation. Bank One of Akron was named as a defendant only on a pendent breach of contract claim not at issue here
 
 
 [6]
 On March 30, 1988, a fourth plaintiff, Theodore Goumas, voluntarily withdrew an identical appeal as to all defendants
 Because the issues involved in all of the appeals are the same, the appellants in all of the cases will be collectively referred to as "plaintiffs." Except as otherwise noted, the defendant banks, officers, and directors will be collectively referred to as "defendants."
 Of the three remaining plaintiffs, only Michaels failed to assert an antitrust claim in its complaint. Michaels did, however, assert an antitrust counterclaim in an action brought by First National to recover on notes. Michaels' antitrust claim was dismissed in a separate order which is not now before this court.
 
 
 [7]
 Fed.R.Civ.P. 8 provides, in pertinent part:
 (a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief ...
 * * *
 (e) Pleading to be Concise and Direct; Consistency.
 (1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.
 
 
 [8]
 Noting that reliance is an essential element of a claim of fraud, the National City Defendants, in a "supplemental brief," urge that plaintiffs did not rely on the alleged misrepresentations of defendants since plaintiffs testified that they did not "shop around" for a lower interest rate. We find this argument to be without merit. Certainly the Michaels Building Co. relied upon the defendant banks to calculate the interest on plaintiffs' loans based upon the banks' prime rates--i.e., the lowest rate offered by a given bank on short term commercial loans. Indeed, as plaintiffs note, when Michaels Building paid off the loan in full from National City Bank of Akron's predecessor, the Goodyear Bank, it relied upon the proper calculation of that payoff balance as being based upon the established "prime rate." Thus, since plaintiffs knew that defendants' loan statements offered a certain prime rate (which allegedly misstated the true prime rate), this information, it must be inferred, influenced plaintiffs' decision to borrow money from those defendant banks
 
 
 [9]
 In their insistence upon plaintiffs' producing the actual names of favored borrowers, defendants border on urging that Rule 9(b) requires that plaintiff plead the evidence of the fraud. The rule, however, requires only that the "circumstances" of the fraud be pled with particularity, not the evidence of the case. While "circumstances" may consist of evidence, the rule does not mandate the presentation of facts and evidence in a complaint. E.g., McGinty v. Beranger v. Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir.1980); In re Cincinnati Gas & Elec. Securities Litigation, 594 F.Supp. 233, 238 (S.D.Ohio 1984); Roger v. Lehman Bros. Kuhn Loeb, Inc., 604 F.Supp. 222, 225 (S.D.Ohio 1984); 2A Moore's Federal Practice Sec. 9.03 at 9-23 (2d ed. 1979); C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1297, at 403-04 (1969)
 
 
 [10]
 For example, the First National Bank loan document states that interest will be charged on a "per annum basis," whereas the Ameritrust loan document provides that "this note shall bear interest ... at a rate per annum which shall be two percent (2.0%) above the Bank's prime rate."