**In re AIR CRASH DISASTER AT DE-TROIT METROPOLITAN AIRPORT ON AUGUST 16, 1987.**

**Carlos VALASQUEZ, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC. and McDonnell Douglas, Defendants.**

**MDL No. 742.**
**Civ. A. No. 87–CV–73263–DT.**

United States District Court, E.D. Michigan, S.D.

Sept. 1, 1989.

Charles Brewer, Phoenix, Ariz., Stanley Chesley, Cincinnati, Ohio, Lee Kreindler, New York City, Gerald Lear and Thomas Meehan, Washington, D.C., and Richard Schaden, Birmingham, Mich., for plaintiffs Steering Committee.

Carroll E. Dubuc, Laxalt, Washington, Perito and Dubuc, Washington, D.C., for defendant Northwest Airlines.

John J. Hennelly, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., and Donald E. Shely, Dykema Gossett, Detroit, Mich., for defendant McDonnell Douglas.

ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On February 28, 1989, the Defendant, Northwest Airlines, Inc. (Northwest), filed

---

an Amended Third Party Complaint and Cross–Claim in this cause against McDonnell Douglas Corporation (MDC), Texas Instruments (TI), National Car Rental Systems (National), and the United States of America (USA).

MDC filed answers to Counts Seven and Eight. Thereafter, on March 31, 1989, MDC filed a Motion to Dismiss Counts Nine and Ten,[1] contending that the allegations within the pleadings, which claim, inter alia, that it made material misrepresentations to Northwest, lack sufficient specificity to be in compliance with *Fed.R.Civ.P.* 9(b). In its response, Northwest strongly disputes this contention.

■ A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *Fed.R.Civ.P.* 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Conclusory allegations that a defendant's conduct was fraudulent are insufficient. A pleading, which simply avers the technical elements of fraud, does not have sufficient information to satisfy the Rule 9(b) requirements. Instead, the complaint must describe the conduct that allegedly constitutes the fraud with some specificity. The Court of Appeals for the Sixth Circuit has held that in order "[t]o satisfy FRCP 9(b), a plaintiff must at minimum allege the time, place and contents of the alleged misrepresentation upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (1984).

■ When a motion to dismiss under Rule 9(b) is to be resolved,

a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a "short and plain statement of the claim," and calls for "simple, concise and direct" allegations. Indeed, Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony. "Thus, it is inappropriate to focus on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules."

*Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988), *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure; Civil Section 1298, at 407 (1969); *see also, Credit & Finance*

1. This motion was filed in the following cases only:

*Atkins*, Civil Action No. 87–CV–73264–DT
*Atkins*, Civil Action No. 88–CV–70337–DT
*Davis*, Civil Action No. 87–CV–74011–DT
*Davis*, Civil Action No. 87–CV–74010–DT
*Favio*, Civil Action No. 87–CV–73275–DT
*Galloway*, Civil Action No. 88–CV–71347–DT
*Rhan*, Civil Action No. 88–CV–70338–DT
*Schweitzer*, Civil Action No. 88–CV–72737–DT
*Thomas*, Civil Action No. 87–CV–74012–DT
*Elfering*, Civil Action No. 88–CV–70680–DT
*Kahle*, Civil Action No. 88–CV–70526–DT
*Rademacher*, Civil Action No. 88–CV–72170–DT
*Shaffer*, Civil Action No. 88–CV–74651–DT
*Acker*, Civil Action No. 89–CV–71636–DT
*Anderson*, Civil Action No. 88–CV–71546–DT
*Dority*, Civil Action No. 88–CV–72169–DT
*Kimmel*, Civil Action No. 88–CV–75012–DT
*Martin*, Civil Action No. 88–CV–74836–DT
*Poole*, Civil Action No. 88–CV–72164–DT
*Poole*, Civil Action No. 88–CV–72165–DT
*Rademacher*, Civil Action No. 88–CV–72171–DT

*Walton*, Civil Action No. 88–CV–71894
*Morris*, Civil Action No. 89–CV–70326–DT
*Roundy*, Civil Action No. 88–CV–74091–DT
*Roundy*, Civil Action No. 88–CV–72186–DT
*Blakely*, Civil Action No. 88–CV–71919–DT
*Blakely*, Civil Action No. 88–CV–74894–DT
*Boersma*, Civil Action No. 88–CV–71545–DT
*Brown*, Civil Action No. 88–CV–71272–DT
*Grigg*, Civil Action No. 87–CV–74582–DT
*Grigg*, Civil Action No. 88–CV–70238–DT
*Grigg*, Civil Action No. 89–CV–71637–DT
*Johnson*, Civil Action No. 88–CV–72040–DT
*Johnson*, Civil Action No. 88–CV–74893–DT
*Jones*, Civil Action No. 87–CV–74681–DT
*Pearson*, Civil Action No. 88–71871–DT
*Ross*, Civil Action No. 88–CV–74895–DT
*Ross*, Civil Action No. 88–CV–71914–DT
*Terpstra*, Civil Action No. 88–CV–71924–DT
*Wennan*, Civil Action No. 88–CV–70702–DT
*Zell*, Civil Action No. 88–CV–73572–DT
*Zell*, Civil Action No. 88–CV–71920–DT
This Order shall pertain to all the above listed cases.

*Corp., Ltd. v. Warner & Swasey Co.,* 638 F.2d 563, 566 (2nd Cir.1981); *Simcox v. San Juan Shipyard, Inc.,* 754 F.2d 430, 440 (1st Cir.1985); *Loew's Inc. v. Makinson,* 10 F.R.D. 36, 37 (D.C.Ohio 1950).

The purpose of Rule 9(b) is to assure that the "defendant [is given] fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Building Co. v. Ameritrust Co., N.A., supra,* at 679; *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2nd Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Wright & Miller instructs that, "... the most basic consideration in making a judgment as to the sufficiency of a pleading [under Rule 9(b) ] is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil Section 1298 at 415.

More specifically, the particularity requirement of Rule 9(b) serves three purposes:

First, it ensures that fraud allegations are concrete enough to give defendants fair notice of the grounds of the complaint, so they can prepare a defense. Second, it protects defendants' reputations or goodwill from the harm that comes from being accused of serious wrongdoing. Third, it inhibits the filing of complaints that are a pretext for the discovery of unknown wrongs, or that are groundless claims designed to coerce a settlement out of defendants who wish to avoid the time and expense of defending themselves.

*In re Consumers Power Company Securities Litigation,* 105 F.R.D. 583, 591 (E.D. Mich.1985); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2nd Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Benoay v. Decker,* 517 F.Supp. 490, 492 (E.D.Mich.1981), *aff'd mem.,* 735 F.2d 1363 (6th Cir.1984).

■ In its Amended Complaint, Northwest generally contends that MDC failed to disclose substantive information regarding the airworthiness of the aircraft which crashed at the Metropolitan Airport in Detroit, Michigan on August 16, 1987. Specifically, Northwest charges MDC with material misrepresentations relating to (1) the failure rates and failure modes that it had experienced with the TI 7274–55 circuit breakers, (2) the CAWS fail light and the CAWS system, (3) the Flight Director/Speed system, (4) the consequences of switching from the takeoff mode to the go around mode in flight, and (5) the simulators.

The facts, which ostensibly support these allegations, appear, in pertinent part, within the Amended Complaint as follows:

MDC, by a series of All Operator Letters (AOLs), AOL 9–1281, dated April 9, 1981, AOL–9–1281A, dated November 22, 1982, and AOL–9–1292B, dated January 14, 1983, advised all aircraft operators using TI–7274–55 circuit breakers manufactured between approximately January 1979 and November 1980 that certain operators had reported to MDC that those circuit breakers were subject to excessive unannunciated failure rates....

In fact, MDC's own aircraft design specifications provide that ... a failure rate of one-half of one percent is excessive and is not an acceptable failure rate.... (Amended Complaint, Paras. 28–30)

MDC required TI to buy back all TI 7274–55 circuit breakers manufactured during the January 1979 through November 1980 period that were held by MDC in its stock, but did not replace TI 7274–55 circuit breakers already installed in aircraft, including the Accident Aircraft, awaiting delivery to customers such as Republic. (*Id.,* Para. 32)

MDC represented that the CAWS installed on the Accident Aircraft, has three redundant power supplies. Contrary to that representation, each CAWS warning is powered by a specific non-redundant electrical circuit protected by either the P–40, R–41 or –31 circuit breaker.

The circuit protected by P–40 circuit breaker on the Aircraft was the only circuit providing electrical input power to the takeoff warning function.

MDC failed to warn Northwest of the potential consequences of a silent failure of a defective TI 7274–55 circuit breaker in a critical system such as CAWS. (*Id.*, Paras. 43–45)

In the course of certification of the MD–80 aircraft, MDC submitted to the FAA a Failure Modes and Effects Analysis ("FEMA") showing that, in the event of a loss of electrical input power to the CAWS, the CAWS fail light would illuminate. . . .

In fact, MD–80 aircraft, including the Accident Aircraft, were manufactured so that the CAWS Fail Light would not illuminate in the event of loss of electrical input power to the CAWS, even though loss of the CAWS unit would result in loss of input of the CAWS warnings. . . . (*Id.*, Paras. 59–60)

MDC advised all MD–80 series operators that the Flight Director/Speed Command System could be relied upon after aircraft rotation to direct the MD–80s to the optimum pitch attitude and air speed for the climb out. . . .

Instead, the Flight Director/Speed Command System, during the first eighty (80) feet or eleven (11) seconds provides guidance based upon certain assumed settings for the flaps and slats. (*Id.*, Paras. 67–69)

Contrary to the contentions within the instant motion, these allegations do provide sufficient notice to MDC of the nature of Northwest's claim of fraud. These pleadings are sufficiently specific with respect to the nature of the claimed misrepresentations and the importance of those misrepresentations in terms of Northwest's reliance upon them. Northwest's contentions have provided MDC with satisfactory time references when they refer to (1) the AOLs, (2) the return of the circuit breakers to TI, and (3) the release of certain information to the Federal Aviation Administration. "Perhaps, if only one [alleged] fraudulent act were involved, more details as to time and place would be required but in [this] action[ ] such detail would unduly lengthen the complaint[ ] in violation of Rule 8(a)." *Loew's Inc. v. Makinson*, 10 F.R.D. 36, 37 (N.D.Ohio 1950).

The Court concludes that the Amended Third Party Complaint and Cross–Claim does satisfy the particularity requirements of Rule 9(b). Accordingly, MDC's motion to dismiss must be denied.

IT IS SO ORDERED.