**BOWLERS' ALLEY, INC., Plaintiff,**

v.

**The CINCINNATI INSURANCE COMPANY, Defendant.**

**Case No. 13–13804.**

United States District Court, E.D. Michigan, Southern Division.

Signed Aug. 26, 2014.

826

David J. Devine, Clifford J. Devine, Butzel Long, Detroit, MI, for Plaintiff.

Alan G. Gregory, Gregory and Meyer, Troy, MI, for Defendant.

## *OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTER–COMPLAINT*

DAVID M. LAWSON, District Judge.

This matter is before the Court on the plaintiff's motion to dismiss the defendant's counter-complaint. The plaintiff's bowling establishment was heavily damaged when water pipes burst and flooded the premises. Its insurer, defendant Cincinnati Insurance Company, made initial loss payments of approximately $600,000. But when the plaintiff submitted a proof of loss that asserted a total loss of $2.6 million, Cincinnati balked and refused to make further payments. The plaintiff filed the present lawsuit for breach of contract, and the defendant responded with a counter-complaint asserting claims for (1) breach of contract (count I); (2) fraud (count II); and (3) unjust enrichment (count III). The defendant seeks a judgment declaring the insurance policy void and return of the $600,000 already paid.

The defendant has filed a response to the plaintiff's motion to dismiss the counter-complaint, and the plaintiff has filed a reply. The Court has reviewed the pleadings and motion papers and finds that the papers adequately set forth the relevant facts and law and oral argument will not aid in the disposition of the motion. Therefore, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2). The hearing previously scheduled for August 26, 2014 is **CANCELLED.** The Court finds that the defendant's allegations of fraud have not been made with particularity, as required by Federal Rule of Civil Procedure 9(b) and the fraud claim is barred by the economic loss doctrine. The unjust enrichment claim cannot survive because of the existence of a contract between the parties. However, the defendant has stated a viable claim for breach of contract in its counter-complaint. Therefore the Court will grant in part and deny in part the plaintiff's motion to dismiss the counter-complaint.

### I.

According to the pleadings, the flood at the plaintiff's bowling facility in May 2012

damaged a number of wooden bowling lane surfaces, and the plaintiff alleges in its complaint that high levels of humidity and condensation in the days after the event also caused the failure of several light fixtures, although the actual flooding only occurred on or below the floor of the facility. Cincinnati had issued a hazard insurance policy that covered the premises. As mentioned, after the plaintiff contacted the insurer, it paid out more than $600,000 based on early estimates that called for resurfacing of the damaged alleys with synthetic overlays, but that amount did not include the claimed damage to light fixtures and certain other expenses for debris removal and general contracting.

On April 4, 2013, Cincinnati sent the plaintiff a request for a proof of loss. Bowler's Alley requested and Cincinnati granted an extension of time to complete the proof of loss. On June 18, 2013, the plaintiff submitted a sworn "interim" statement of proof of loss with the $2.6 million price tag, which Cincinnati rejected on July 17, 2013. The rejection letter set forth in detail nine categories of items and amounts included in the proof of loss that Cincinnati claimed were not covered, insufficiently documented, or contradictory to previous statements regarding the extent of the loss and damages.

On August 16, 2013, the plaintiff responded by letter and demanded that Cincinnati proceed to process its claim immediately. In that letter, the plaintiff addressed each of the items of asserted deficiency in turn, contending that the items were allowable and appropriate, and that it previously had supplied adequate documentation, or soon would provide documentation, to substantiate each item. On August 30, 2013, Cincinnati sent a letter setting forth its continued discontent with the items pointed out in its earlier rejection letter, asserting that the August 16, 2013 letter was nonresponsive to various requests, and stating that certain requested documents still had not been provided.

In "Section D" of the policy, entitled "Loss Conditions," the policy states that in the event of loss or damage, the insured must:

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

(7) Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

Counter–Compl., Ex. 1, Policy at 27. The policy also states that the insurer "may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records." *Id.* at 28. The parties agree that no examination under oath (EUO) occurred before the plaintiff filed its lawsuit, but they hotly dispute which of them was responsible for that failure. Cincinnati alleges that it requested that the plaintiff submit to an EUO, but the plaintiff refused to do so and failed to turn over certain documents that

Cincinnati deemed essential to the conduct of an effective EUO. The plaintiff asserts that when Cincinnati demanded an EUO the plaintiff responded that it was willing to submit to one and demanded that Cincinnati promptly schedule the examination. The plaintiff contends that, instead of arranging for an EUO, Cincinnati made repeated gratuitous requests for more documents and insisted that it could not perform the EUO until these requests were fulfilled. The plaintiff maintains that it fully complied with these requests and has disclosed all of the relevant documents that it has which substantiate the amounts set forth in its proof of loss.

The "Commercial Property Conditions" supplement to the policy states that "[n]o one may bring a legal action against [the insurer]" unless "[t]here has been full compliance with all terms of [Section D]," and "[t]he action is brought within 2 years after the date on which the direct 'physical' loss occurred." Counter–Compl., Ex. 1, Policy at 65. The commercial property supplement further states that

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This Coverage Part;
>
> 2. The Covered Property;
>
> 3. Your interest in the Covered Property; or
>
> 4. A claim under this Coverage Part.

*Ibid.*

In support of all three counts in the counter-complaint, Cincinnati alleged that Bowlers' Alley submitted a sworn proof of loss claiming $1,060,302.81, and noting the $600,000 advance conditioned on compliance with the policy terms. Cincinnati then alleged the following:

9. Subsequent to the advance payment and for purposes of its claim, Bowlers' Alley provided financial statements, records and information to representatives retained by CIC to procure payment from CIC for alleged Business Income loss. Upon information and belief, ... the financial statements, records and information provided to CIC contain false, materially overstated and/or fraudulent data and were provided with the intent to mislead CIC about the financial condition of Bowlers' Alley in an effort to obtain insurance proceeds to which Bowlers' Alley is not entitled.

10. Subsequent to representing to CIC that the lanes could be repaired and after accepting payment from CIC for the repairs, Bowlers' Alley submitted a Sworn Statement in Proof of Loss alleging that the bowling lanes could not be repaired as it had previously represented, claimed grossly excessive replacement costs and presented claims for loss of Business Income and Extra Expense based the documents and information referenced in paragraph [9] above. Upon information and belief, ... the Sworn Statement in Proof of Loss contains false and/or fraudulent information and was submitted by Bowlers' Alley in an effort to obtain insurance proceeds to which Bowlers' Alley is not entitled.

11. CIC then requested the Examination Under Oath of Bowlers' Alley's representatives and the production of material records and documents in order to complete its investigation. Bowlers' Alley refused to cooperate and failed to provide the requested records or submit to the Examination Under Oath at all times reasonable requested in an effort to conceal the fraudulent information provided by Bowlers' Alley described in paragraphs 9 and 10 of this Counter–Complaint.

12. Bowlers' Alley instead refused to produce the records requested and demanded that CIC waive its rights under the policy and excuse Bowlers' Alley's breach of policy conditions in order to proceed with the Examination Under Oath of its representatives.

. . .

15. . . . Bowlers' Alley and/or its representatives have made and/or presented documents, including but not limited to the Sworn Statement in Proof of Loss presented to CIC on June 18, 2013, containing representations concerning material facts in support of its claim which [that] violated the Commercial Property Conditions for Concealment, Misrepresentation or Fraud and otherwise attempted to mislead and defraud CIC during the claim investigation.

16. The above representations were material to the investigation of the claim and the assessment of insurance coverage and amount of loss.

Counter–Compl. ¶¶ 9–16.

The plaintiff responded to the counter-complaint with its motion to dismiss, arguing that the pleading fails to specify the plaintiff's statements alleged to be false and is otherwise lacking in necessary detail, the fraud claim cannot survive because the parties' relationship is governed by a written contract, and the existence of a contract dooms the unjust enrichment count.

## II.

■ The plaintiff's motion is based on Federal Rule of Civil Procedure 12(b)(6), which is intended "to allow a [counter-]defendant to test whether, as a matter of law, the [counter-]plaintiff is entitled to legal relief if all the facts and allegations in the [counter-]complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir.2001) (citing *Mayer v.*

*Mylod,* 988 F.2d 635, 638 (6th Cir.1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008). "[A] judge may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum,* 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.,* 561 F.3d 478, 488 (6th Cir. 2009). The counter-plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'" *Fabian v. Fulmer Helmets, Inc.,* 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

■ Under the new regime ushered in by *Twombly* and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleaded facts must be accepted by reviewing courts but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabi-*

*an,* 628 F.3d at 281 (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

### A. Breach of Contract

 To state a claim for breach of contract under Michigan law, a counter-plaintiff first must allege the elements of a valid contract. *Pawlak v. Redox Corp.,* 182 Mich.App. 758, 765, 453 N.W.2d 304, 307 (1990). A valid contract is formed when there are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Thomas v. Leja,* 187 Mich.App. 418, 468 N.W.2d 58, 60 (1991). The counter-plaintiff then must allege (1) the terms of the contract, (2) breach of those terms by the counter-defendant, and (3) injury to the counter-plaintiff resulting from the breach. *In re Brown,* 342 F.3d 620, 628 (6th Cir.2003). The counter-plaintiff has pleaded facts in its complaint which establish each of these elements.

 The parties do not dispute that a contract—the insurance policy—existed between them, a copy of which was attached as Exhibit 1 to the counter-complaint. They do not dispute that under that policy the insurer had the duty to pay claims for covered losses. Cincinnati alleges in its counter-complaint that it complied with its duty promptly to investigate the claim and in fact made advance loss payments amounting to more than $600,000, but Bowlers' Alley breached its contractual duties by (1) "refusing to produce records and documents for inspection and copy and make its representatives available for Examination Under Oath following the production of the requested records and documents"; (2) "concealing and/or misrepresenting material facts to the loss and claim"; and (3) "submitting a false and fraudulent claim." Counter-Compl. ¶¶ 21–23. Cincinnati cited the spe-cific provisions of the contract imposing on the insured the duties to cooperate with the claim investigation, submit required documents, and appear for an examination under oath if one was requested. Cincinnati also cited the "fraud and concealment" provision of the contract under which it contends that coverage is voided if the insured materially misrepresents any information supporting the fact or extent of its losses. Those allegations are sufficient under Michigan law to state a valid claim for breach of contract.

 The plaintiff contends that Cincinnati failed to describe the fraud and misrepresentation on which the claim for breach is partially premised with the specificity required by Rule 9(b). When alleging fraud in a federal complaint, a party must state "with particularity" the circumstances constituting the ˑfraud. Fed. R.Civ.P. 9(b); *see also Bennett v. MIS Corp.,* 607 F.3d 1076, 1100 (6th Cir.2010). That means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 942–43 (6th Cir.2009) (quotation marks and citation omitted). In addition, a party must identify the "alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993) (quotation marks and citations omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).

 It is true that "[w]hen faced with a motion to dismiss for failure to

plead fraud 'with particularity' as required by Rule 9(b) . . ., 'a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.'" *Whalen v. Stryker, Corp.*, 783 F.Supp.2d 977, 982 (E.D.Ky.2011) (quoting *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988)). "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8." *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir.2007) (quoting *Michaels*, 848 F.2d at 679). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *Ibid.*

Nonetheless, the notice of fraud furnished by the pleading must be sufficiently detailed to permit an informed response. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir.2011) (emphasizing that Rule 9(b)'s "purpose is to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond" (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir.2007))). In addition, "[t]he heightened pleading standard is also designed to prevent 'fishing expeditions,' to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Ibid.* (citations omitted). "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way [counter-] plaintiff[']s claim of fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir.1993) (quotation marks omitted).

The counter-complaint here does not satisfy that "threshold test." The pleading states only in a general way that Bowlers' Alley claimed "grossly excessive replacement costs" and submitted documents with "false and/or fraudulent information." One is then left only to guess which costs were excessive, what statements were fraudulent, and why were those statements false. Cincinnati contends that several of the expense line items claimed by the plaintiff were excluded from coverage under the policy's explicit terms. But Cincinnati's counter-complaint contains no specific facts to show why any statements relating to those expenses were *false*. The Court must conclude that the allegations of fraud in the counter-complaint are woefully inadequate to satisfy Rule 9(b)'s heightened requirement.

However, Cincinnati alleges that Bowlers' Alley failed to cooperate in the investigation by dodging the EUO, and that Bowlers' Alley did not fulfill the conditions that would trigger Cincinnati's obligation to pay. Although "when denying that a condition precedent has occurred or been performed, a party must do so with particularity," Fed.R.Civ.P. 9(c), the allegations relating to the EUO and refusal to furnish documents suffice. The Court concludes, therefore, that the counter-complaint states a viable breach of contract claim.

### B. Fraud

For the reasons discussed above, the allegations in the counter-complaint do not suffice to support a free standing claim for fraud. Moreover, Cincinnati's fraud count faces a second obstacle: where a contract governs the relationship between the parties, and where the alleged misrepresentation is factually intertwined with a party's contractual duties, the plaintiff attempting to proceed on a claim of fraud must allege a "violation of a

legal duty separate and distinct from the contractual obligation." *Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.,* 454 Mich. 65, 84, 559 N.W.2d 647, 658 (1997) (citing *Hart v. Ludwig,* 347 Mich. 559, 560, 79 N.W.2d 895, 897 (1956)). Here, it is evident that the insured's duty not to misrepresent the financial information substantiating its proof of loss would not exist in the absence of the insurance contract between the parties. *See QQC, Inc. v. Hewlett–Packard Co.,* 258 F.Supp.2d 718, 722 (E.D.Mich.2003). The alleged misrepresentation arises directly from the express contractual obligations truthfully to assert and to support with adequate documentation only those losses actually sustained by the insured. In addition, the damages sought in counts I and II are the same. Count II of the amended countercomplaint therefore fails to state a claim on which relief may be granted.

### C. Unjust Enrichment

Under Michigan law, to plead a claim of unjust enrichment, a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted. *Fodale v. Waste Mgmt. of Michigan, Inc.,* 271 Mich.App. 11, 36, 718 N.W.2d 827, 841 (2006). Michigan courts will then imply a contract to prevent unjust enrichment. *Ibid.* However, courts will not *imply* a contract where there is an *express* contract governing the same subject matter. *Ibid.* " '[T]he law operates to imply a contract in order to prevent unjust enrichment,' and ... this will not occur if there is already an express contract on the same subject matter." *In re DiMeglio Estate,* No. 315319, 856 N.W.2d 245, 2014 WL 3928558 (Mich.Ct.App. Aug. 12, 2014) (quoting *Barber v. SMH (US), Inc.,* 202 Mich.App. 366, 375, 509 N.W.2d 791, 796 (1993)).

Bowler's Alley argues that the implied contract claim fails as a matter of law because the parties signed an express contract and Cincinnati cannot plead claims for both breach of contract and implied contract. That is not exactly correct. A party cannot *recover* under theories of *quantum meruit* or unjust enrichment when a transaction is governed by a valid contract. *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich.App. 187, 194–95, 729 N.W.2d 898, 904 (2006) (holding that "an implied contract may not be found if there is an express contract *between the same parties* on the same subject matter" (quoting 42 C.J.S., Implied and Constructive Contracts, § 34, p. 33)). But Federal Rule of Civil Procedure 8(a)(3) permits a pleader to include "a demand for the relief sought, which may include relief in the alternative or different types of relief."

Alternatively pleading express contract and implied contract claims (whether styled as unjust enrichment or *quantum meruit* ) is allowed when, for instance, there is a dispute between the parties as to whether an express agreement exists. *Cascade Elec. Co. v. Rice,* 70 Mich. App. 420, 426–27, 245 N.W.2d 774, 777 (1976) (finding that the plaintiff could bring both actions because the plaintiff performed work that was not contemplated under the express contract and the defendant disputed the existence of an express verbal contract). A party is not required to "elect to proceed under one theory or the other, but could seek recovery on the basis either of an express [ ] contract, or an implied contract if the [trier of fact] found that the express [ ] contract did not exist." *Id.* at 427, 245 N.W.2d at 777; *see also H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.,* 234 Mich.App. 550, 573, 595 N.W.2d 176, 188 (1999) (holding that a claim for unjust enrichment should not be dismissed because the court may

find that the express contract was no longer in force). A plaintiff also may bring a breach of contract claim and an unjust enrichment claim in cases where the defendant has "kept its options open, and may deny the existence of a contract." *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir.1996) (holding that the plaintiff may proceed under a claim for breach of contract and unjust enrichment because the defendant "admitted the existence of a contract solely for the purposes of summary judgment").

■ That is not the case here, though. The parties do not dispute the existence of a contract in the form of the insurance policy. A plaintiff can only plead breach of contract and implied contract claims in the alternative if there is doubt as to the existence of a contract. *Ford Motor Co. v. Ghreiwati Auto,* 945 F.Supp.2d 851, 871 (E.D.Mich.2013). "If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract. In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 491 (E.D.Mich.1993) (citations omitted).

Cincinnati attempts to work around this limitation by arguing that an implied contract claim is permissible because, if proven, its allegations of fraudulent misrepresentation would render the parties' contract void. But that does not render the contract doubtful or nonexistent. And by advancing this argument, it is Cincinnati, not its insured, that denies the existence of the contract. Count III of the amended counter-complaint therefore will be dismissed.

### III.

The counter-plaintiff has pleaded a valid claim for breach of contract, but it has not successfully pleaded claims for fraud or unjust enrichment.

Accordingly, it is **ORDERED** that the plaintiff's motion to dismiss [dkt. # 25] is **GRANTED IN PART.**

It is further **ORDERED** that counts II and III of the amended counter-complaint are **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that the plaintiff's motion to dismiss is **DENIED** in all other respects.