**Paul and Regina TERRY, Plaintiffs,**

v.

**COMMUNITY BANK OF NORTHERN VIRGINIA; GMAC–Residential Funding Corporation; Equityplus Financial, Inc.; Equityplus, LLC, Equity Guaranty, LLC; Title America, LLC; and Guaranty National Bank of Tallahassee, Defendants.**

No. 02–2534.

United States District Court,
W.D. Tennessee,
Western Division.

March 26, 2003.

Lee J. Bloomfield, Esq., Allen, Godwin, Morris, Laurenzi & Bloomfield, P.C., Memphis, TN, A. Hoyt Rowell, III, Fred Thompson, Daniel O. Myers, Kevin L. Oufnac, Ness, Motley, Loadholt, Richardson & Poole, Mount Pleasant, SC, Eric G. Calhoun, Lawson & Fields, PC, Dallas, TX, for plaintiffs.

Kemper B. Durand, Esq., Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, F. Douglas Ross, Odin, Feldman & Pittleman, PC, Fairfax, VA, W.J. Michael Cody, Esq., Jonathan P. Lakey, Esq., Burch, Porter & Johnson, Samuel L. Crain, Jr., Esq., Burch, Porter & Johnson, Memphis, TN, Joseph A. Ingrisano, Jeffrey S. Jacobovitz, Kutak, Rock LLP, Washington, DC, Cyrus Benson, III,

White & Case, LLP, New York City, Rick Solum, Patrick J. McLaughlin, Dorsey & Whitney LLP, Minneapolis, MN, John B. Starnes, Baker, Donelson, Bearman & Caldwell, John C. Speer, Bass, Berry & Sims, PLC, Memphis, TN, Thomas L. Allen, Roy W. Arnold, Mary J. Hackett, Laurie Arnold, Redd, Smith, LLP, Pittsburgh, PA, John A. Irvine, Jr., Wyatt, Tarrant & Combs, Robert L. Crawford, Wyatt, Tarrant & Combs, Memphis, TN, John J. Heflin, III, Esq., Kenneth P. Jones, Esq., Bourland, Heflin, Alarez & Minor, Memphis, TN, F. Thomas Eck, IV, The Eck Law Firm, Chantilly, VA, Michael I. Less, Esq., Less, Getz & Lipman, Elizabeth B. Stengel, Esq., Less, Getz & Lipman, Memphis, TN, Pamela M. Conover, Ward B. Coe, III, Whiteford, Taylor & Preston, Baltimore, MD, Scott T. Beall, Esq., Shepherd D. Tate, Esq., Michael A. Brady, Tate, Lazarini & Beall, PLC, Memphis, TN, Sheldon Zenner, Esq., David Stagman, Esq., Katten, Muchin & Zavis, Chicago, IL, Earle J. Schwarz, Esq., Glankler, Brown, PLLC, Memphis, TN, Edward A. Dean, Thomas P. Oldweiler, Armbrecht, Jackson LLP, Mobile, AL, for defendants.

Jimmy Moore, Memphis, TN, pro se.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COMMUNITY BANK OF NORTHERN VIRGINIA'S MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT (Dkt # 56) AND PLAINTIFFS' AMENDED COMPLAINT (Dkt # 109)**

DONALD, District Judge.

This matter is before the Court on the motion of Defendant Community Bank of Northern Virginia ("CBNV") to dismiss Plaintiffs Paul and Regina Terry's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The amended complaint alleges violations of Tennessee Code Annotated Sections 47–14–102, 47–14–103, 47–14–112, 47–14–113, 47–14–117, 47–15–103 and 47–15–104, the Rules of the Tennessee Department of Financial Institutions, chapter 0180–17, the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated Section 47–18–101, et seq., and common law claims of illegal contract and civil conspiracy. Specifically, Plaintiffs allege that CBNV is liable for unlawful conduct committed in connection with charges, costs and interest assessed in the issuance of loans secured by Plaintiffs' home. CBNV asserts that the amended complaint fails to state a claim as a matter of law because: (1) the Federal Depository Institutions Deregulation and Monetary Control Act ("DIDA") preempts Tennessee law with respect to the interest rates and charges that can be assessed on home mortgage loans; and (2) even if Tennessee law does apply (a) Plaintiffs' claims are barred by relevant statutes of limitation, (b) the interest rates charged on the loans were not excessive, (c) the Tennessee usury statute provides Plaintiffs' exclusive remedy, (d) all of the charges challenged by Plaintiffs which were not paid to the lender are excluded from regulation by Tennessee's loan charges statute, and (e) voiding Plaintiffs' loans would be an improper remedy under Tennessee law.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, the Court grants in part and denies in part CBNV's motions to dismiss.

---

1. Plaintiffs' original complaint was removed to this Court on July 3, 2002, and Plaintiffs filed an amended complaint on December 17, 2002. CBNV filed a motion to dismiss the original complaint on August 9, 2002, and moved to dismiss the amended complaint on December 13, 2002. Because the amended complaint raises no new causes of action, this Order addresses only the amended complaint, but disposes of both of CBNV's motions to dismiss, Dkt # s 56 and 109.

## I. Procedural History

This case was removed to the United States District Court for the Western District of Tennessee from the Circuit Court of Shelby County, Tennessee on July 3, 2002. In addition to CBNV, the original complaint named as defendants: Firstplus Home Loan Trust 1996–2; Firstplus Home Loan Owner Trust 1996–3; Firstplus Home Owner Loan Trust 1996–4; Firstplus Home Loan Owner Trust 1997–1; Firstplus Home Loan Owner Trust 1997–2; Firstplus Home Loan Owner Trust 1997–3; Firstplus Home Loan Owner Trust 1997–4; Firstplus Home Loan Owner Trust 1998–1; Firstplus Home Loan Trust 1998–2; Firstplus Home Loan Owner Trust 1998–3; Firstplus Home Loan Owner Trust 1998–4; Firstplus Home Loan Owner Trust 1998–5; GMAC–Residential Financial Corporation ("RFC"); US Bank National, Association, N.D.; Sovereign Bank; Banc One Corp.; Empire Funding Home Loan Owner Trust 1997–1; Empire Funding Home Loan Owner Trust 1997–2; Empire Funding Home Loan Owner Trust 1997–3; Empire Funding Home Loan Owner Trust 1997–4; Empire Funding Home Loan Owner Trust 1998–1; Empire Funding Home Loan Owner Trust 1998–2; Empire Funding Home Loan Owner Trust 1998–3; Empire Funding Home Loan Owner Trust 1999–1; Irwin Union Bank & Trust; EquityPlus Financial, Inc. ("EPF"); Amaximis Lending, LP; Household Finance Corp.; GRMT Mortgage Loan Trust 2001–1; PB Reit, Inc.; PB Investment Corp.; Real Time Resolutions; UBS Warburg Real Estate Securities f/k/a Paine Webber Real Estate Securities, Inc.; German American Capital Corporation; Ace Securities Corporate Home Loan Trust 1999 A; and EquityPlus, LLC.

On August 9, 2002, CBNV moved to dismiss the original complaint. On September 30, 2002, the Court dismissed with prejudice the claims against all defendants except for RFC, CBNV and EPF. *See* Agreed Order Granting Defendants' Motion to Dismiss, filed September 30, 2002. On October 15, 2002, Plaintiffs filed a consolidated opposition to RFC and CBNV's motions to dismiss the original complaint. Plaintiffs then moved, and the Court granted leave, to amend the complaint in November 2002. On December 17, 2002, Plaintiff filed a first amended class action complaint. The amended complaint alleges the same causes of action and adds Guaranty National Bank of Tallahassee ("GNBT"), Equity Guaranty, LLC, and Title America, LLC as defendants. CBNV moved to dismiss the amended complaint on December 13, 2002. Plaintiffs filed a consolidated opposition to RFC and CBNV's motions to dismiss the amended complaint on January 27, 2003.

## II. Factual Background [2]

On May 28, 1998, Plaintiffs obtained a second mortgage home equity loan ("1998 loan"). The 1998 loan documents state that the 1998 loan was originated by CBNV and brokered by EPF. The principal amount of the 1998 loan was $28,100, which was subject to an interest rate of 19.859%. The term of the 1998 loan was twenty years, with the last payment scheduled for September 4, 2019. The HUD–1 Settlement Statement indicated that the 1998 loan included the following costs and fees which were to be paid to CBNV: a $2,248 loan origination fee, an $843 loan discount fee, and a $95 application fee. The following charges were to be paid to Title America: a $295 settlement or closing fee, a $300 title search or abstract fee, a $300 title exam fee, a $25 overnight fee, and a $250 document review fee. These origination and title fees were added to the principal of the loan, requiring Plaintiffs to

---

**2.** The following statement of facts is taken from Plaintiffs' amended complaint.

pay nothing at the closing. The fees were included as a part of Plaintiffs' monthly payments. RFC customarily made purchase pledges or commitments relating to loans it purchased from banks and brokers prior to the actual settlement or closing of the loan. RFC had a pre-purchase agreement to buy Plaintiffs' 1998 loan before it closed, and immediately after the 1998 loan closed, the 1998 loan was sold to RFC. Thereafter, RFC collected monthly payments from Plaintiffs.

On May 31, 1999, Plaintiffs refinanced the 1998 loan by securing a third mortgage home equity loan ("1999 loan"). The loan documents state that the 1999 loan was originated by GNBT and brokered by Equity Guaranty, LLC. The principal amount of the 1999 loan was $57,000, which was subject to an interest rate of 15.971%. The term of the 1999 loan was fifteen years, with the last payment scheduled on June 6, 2015. The HUD–1 Settlement Statement indicated that the 1999 loan included the following costs and fees which were to be paid to GBNT: a $5,700 loan origination fee, a $1,140 loan discount fee, a $95 application fee, and a $185 underwriting fee. The following charges were to be paid to Title America: a $200 settlement or closing fee, a $115 title search or abstract fee, a $300 title exam fee, a $25 overnight fee, a $260 document review fee, a $250 processing fee, and a $94.25 recording fee. These origination and title fees were added to the principal of the loan, requiring Plaintiffs to pay nothing at the closing. The fees were included as a part of Plaintiffs' monthly payments. Immediately after the 1999 loan closed, it was sold to RFC pursuant to a pre-purchase agreement. Thereafter, RFC collected monthly payments from Plaintiffs.

### III. Legal Standard

A party may bring a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6). This motion only tests whether a cognizable claim has been pleaded in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Furthermore, the complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405–406 (6th Cir.1998).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *see also Neitzke*, 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis*, 135 F.3d at 405. Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake*, 537 F.2d at 858. Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## IV. Analysis

### A. Excessive Interest

■ CBNV avers that Plaintiffs' excessive interest claim (Count I) must be dismissed because DIDA preempts Tennessee's loan interest rate ceiling statutes, permitting CBNV to charge interest rates consistent with the laws of Virginia, the state in which CBNV is chartered. CBNV further asserts that Plaintiffs have not and cannot allege that CBNV's interest rates are unlawful under Virginia law. Therefore, CBNV concludes, Plaintiffs fail to state a claim for charging excessive interest as a matter of law. The Court disagrees. DIDA permits state-chartered banks to impose interest rates on loans pursuant to the laws of the states in which they are chartered, even if such interest rates exceed the rate permissible under the laws of the state in which the loan is executed. 12 U.S.C. § 1813d(a). CBNV, a Virginia, state-chartered bank, concedes that it is entitled to invoke DIDA preemption only if it is the bank that funded Plaintiffs' 1998 loan. Although Plaintiffs do not explicitly state that CBNV did not fund their 1998 loan, they are not required to do so to survive dismissal.

Plaintiffs allege that CBNV "did nothing to provide the loan to Plaintiffs ..., and therefore, incurred no expenses, losses, or risks [associated with the origination of] the loan[ ]." Am. Compl. at ¶ 35, 39. Plaintiffs further allege that CBNV was merely "renting" its state-charter to brokers to assist them in subverting Tennessee's interest rate ceiling statutes. Am. Compl. at ¶ 39. In return, Plaintiffs assert, CBNV received a portion of the origination and title fees as profit for participating in the transaction. *Id.* In fact, Plaintiffs allege, it was "RFC [who] provided the funds necessary for [CBNV] to make more loans." Am. Compl. at ¶ 74. Construing these assertions liberally in favor of Plaintiffs, the Court finds Plaintiffs have sufficiently alleged that CBNV did not fund Plaintiffs' 1998 loan. Moreover, it does not appear "beyond doubt that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. If Plaintiffs are able to uncover evidence during discovery that CBNV in fact did not fund the 1998 loan, CBNV will not be protected by DIDA's preemption. Thus, the Court finds that dismissal of the excessive interest claim is premature. Accordingly, CBNV's motion to dismiss the excessive interest claim (Count I) is DENIED.

### B. Excessive Loan Charges/Fees

■ CBNV next argues that Plaintiffs' claim based on excessive loan charges (Count II) in violation of Tenn.Code. Ann. § 47–14–113 should be dismissed because Plaintiffs cannot first argue that CBNV is not the lender who funded Plaintiffs' loans, and then later assert that CBNV was a lender who unlawfully assessed loan charges. The Court agrees. Tennessee Code Annotated § 47–14–102(8) defines loan charges as "compensation to the *lender* for services or expenses directly incident to the loan or contract to the loan." (emphasis added). Thus, lenders are the only persons who may be liable for violations of Tenn.Code. Ann. § 47–14–113. As

was discussed *supra* at IV.A., Plaintiffs vehemently deny that CBNV funded their 1998 loan, and therefore could not be the "lender" as to that loan. Taking this fact to be true for the purposes of this motion, the Court finds that CBNV cannot be liable to Plaintiffs for violations of Tennessee's loan charges statute. Accordingly, the Court GRANTS CBNV's motion to dismiss Plaintiffs' excessive loan charges cause of action (Count II).[3]

### C. Tennessee Consumer Protection Act

■■ CBNV further asserts that because Plaintiffs' TCPA claim (Count III) is based on excessive charges in contravention of Tennessee statutory law, it must be dismissed because the Plaintiffs' exclusive remedy is the Tennessee usury statute which is preempted by DIDA. The Court disagrees. First, the Court already has found that CBNV's DIDA preemption argument is without merit at the dismissal stage. *See supra* IV.A. Second, Plaintiffs' TCPA claim is not restricted to allegations of excessive loan charges. In addition to alleging excessive loan charges, Plaintiffs' TCPA cause of action is based on the alleged "manufacturing [of] deceptive closing charges, misrepresenting the identity of the lender, misrepresenting the actual recipient of the origination fees, etc." Pls.' Consolidated Opp. to Defs.' Mots. to Dismiss First Am. Compl. ("Pls.' Opp.") at p. 44. The TCPA prohibits "unfair or deceptive acts or practices [in] the conduct of any trade or commerce." Tenn.Code Ann. § 47–18–104(b). The Court finds Plaintiffs' allegations regarding misrepresentations made during the course of extending loans sufficient to plead a cause of action for violation of the TCPA.

■■ CBNV also asserts that Plaintiffs' TCPA claim is barred by the statute of limitations. Plaintiffs counter, however, that their delayed filing of the TCPA claim is saved by the "discovery rule." The Court agrees that the discovery rule applies to this case. Any action brought pursuant to the TCPA "shall be brought within one (1) year from a person's discovery of the unlawful act or practice . . . ." Tenn.Code Ann. § 47–1–110. Under the discovery rule, a "cause of action accrues and the statute of limitations commences to run when [a claimant] discovers, or in the exercise of reasonable diligence . . . should have discovered the [wrongdoing]." *Stanbury v. Bacardi,* 953 S.W.2d 671, 675 (Tenn.1997). Thus, Plaintiffs were required to assert their TCPA claim upon discovering CBNV's allegedly unlawful conduct. Plaintiffs assert that "the loan documents falsely identify CBNV . . . as the lender" on their loan documents, thereby "conceal[ing] from Plaintiffs the identity of the true lender[ ] and the illegal nature of the loans." Pls.' Opp. at p. 42. In other words, since the National Banking Act and DIDA permit out of state state-chartered banks to charge interest and loan fees in excess of the statutory ceilings imposed by Tennessee, Plaintiffs were unaware at the closing that any malfeasance had occurred. The Court finds this allegation sufficient to plead that Plaintiffs were unaware of the facts supporting their cause of action until they discovered that CBNV allegedly did not fund their loans. Plaintiffs did not discover the identity of the "actual lender [until] the spring of 2002." *Id.* Thus, Plaintiffs' amended complaint, filed December 17, 2002, is timely. Accordingly, the Court

---

**3.** This finding does not extend to dismiss Plaintiffs' claim for excessive interest. Interest is defined as "compensation for the use or detention of, or forbearance to collect, money over a period of time." Tenn.Code. Ann. § 47–14–102(7). Thus, interest is not statutorily limited to payments made to "lenders" for the use of money.

DENIES CBNV's motion to dismiss Plaintiffs' TCPA claim (Count III).

### D. Illegal Contract

Plaintiffs voluntarily withdrew their "void contract claim [Count IV] on the loans." *Id.* at 44. Accordingly, the Court GRANTS CBNV's motion to dismiss the illegal contract claim.

### E. Civil Conspiracy

■■ CBNV maintains that the same reasons for dismissing Plaintiffs' other causes of action warrant dismissal of Plaintiffs' civil conspiracy claim (Count V). [CBNV's] Mem. in Supp. of Mot. to Dismiss Pls.' Am. Compl. ("CBNV's Mem.") at 21. The Court disagrees. In Tennessee, "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damages to the plaintiff." *Trau–Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 703 (Tenn.2002). In their amended complaint, Plaintiffs allege that "CBNV and the brokers to whom it rented its charter intentionally and knowingly entered into a combination and civil conspiracy calculated to extract additional money from Plaintiffs." Am. Compl. at ¶ 175. "In furtherance of the combination and civil conspiracy, CBNV and the brokers to whom it rented its charter ostensibly originated loans to Plaintiffs ... and the loans included excessive, illegal, and bogus fees and interest." *Id.* at ¶ 176. The Court finds these allegations sufficient to state a claim for civil conspiracy. Furthermore, contrary to CBNV's assertions, neither DIDA preemption nor the one year statute of limitations applicable to tort causes of action constitute bases for dismissing this claim. *See supra* IV.A., C. Accordingly, CBNV's motion to dismiss Plaintiffs' conspiracy claim (Count V) is DENIED.

### F. Misjoinder Pursuant to Fed. R.Civ.P. 20(a)

■ Finally, CBNV argues that Plaintiffs' claims arising out of the 1999 loan allegedly funded by GBNT are improperly joined pursuant to Federal Rule of Civil Procedure 20(a). The Court disagrees. Rule 20(a) permits joinder of all persons as defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." CBNV asserts that because the claims in this case involve " 'different banks, different contracts and different terms,' " they cannot arise out of the same transaction or occurrence. CBNV's Mem. at p. 22. Plaintiffs argue, however, that "the two loans were in fact originated by the same non-bank entity in Reston, Virginia, as part of the same rent-a-charter conspiracy." Pls.' Opp. at 48. In other words, Plaintiffs aver that the 1998 and 1999 loans are part of a conspiracy which involved the same parties in reality, and therefore constitute a series of occurrences or transactions. The Court finds this allegation sufficient to permit joinder of these claims. Defendants' argument that "Plaintiff cannot establish that [CBNV] did not fund their loan" is premature at the dismissal stage where discovery has yet to be completed. [CBNV's] Reply to Pls.' Consolidated Opp. to Defs.' Mot. to Dismiss the First Am. Class Action Compl. at p. 23; see *supra,* IV.A. Furthermore, the manner in which a court chooses to address circumstances where joinder may be improper is within the Court's sound discretion. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 682 (6th Cir.1988). In the instant case, the Court finds that the interests of justice and judicial economy mitigate against dismissal or severance of

any of the Defendants based on alleged misjoinder at this stage. Accordingly, the Court finds CBNV's misjoinder argument without merit.

## V. Conclusion

For the foregoing reasons, CBNV's motions to dismiss (Dkt # s 56 and 109) are GRANTED as to Counts II and IV, and DENIED as to Counts I, III, and V.