# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 20, 2016 Session

## SECURAMERICA BUSINESS CREDIT v. SOUTHLAND TRANSPORTATION CO., LLC., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001803-07     Donna M. Fields, Judge**

---

**No. W2015-00391-COA-R3-CV – Filed April 1, 2016**

---

This is the third appeal involving liability on personal guaranties securing the debt of a transportation company. On remand after our second opinion, the trial court found that the transportation company and the lender, through the actions of its president, entered into a conspiracy to violate the Tennessee Consumer Protection Act ("TCPA") and violated the duty of good faith and fair dealing, thereby relieving the guarantors of their liability under the continuing guaranties. Specifically, the trial court found that the guarantors were "consumers" under the TCPA, that the guarantors suffered an ascertainable loss due to the transportation company's deceptive acts, and that a violation of the TCPA can be a predicate tort for a civil conspiracy claim. Now, we reverse the trial court's finding that the transportation company's acts affected trade or commerce within the meaning of the TCPA. Accordingly, we also reverse the trial court's determination that the guarantors should be released from their guaranties.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which KENNY ARMSTRONG, J., and JOHN EVERETT WILLIAMS, SP. J., joined.

William O. Luckett, Jr., Clarksdale, Mississippi, and Lorrie K. Ridder, Indianapolis, Indiana, for the appellant, SecurAmerica Business Credit.

David Jarvis Cocke, Memphis, Tennessee, for the appellees, Karl Schledwitz and Terry Lynch.

## OPINION

## I. Background & Procedural History

This is the third appeal in this case. In our previous opinion in this case, the facts and procedural history were discussed at length. For a full history, see *SecurAmerica Business Credit v. Schledwitz*, No. W2012-02605-COA-R3-CV, 2014 WL 1266121 (Tenn. Ct. App. Mar. 28, 2014) (hereinafter "*SecurAmerica II*").

Briefly, Appellant SecurAmerica Business Credit ("Appellant" or "SecurAmerica") brought this action against Southland Transportation Co., LLC ("Southland Transportation"), Southland Capital Co. ("Southland Capital"), and Appellees Karl Schledwitz and Terry Lynch. *SecurAmerica II*, 2014 WL 1266121 at *1. SecurAmerica's claims arise from an alleged default on a September 16, 1999 Secured Revolving Credit Agreement ("Credit Agreement" or "SRCA") between SecurAmerica and Southland Transportation, a trucking company. *Id.* The Credit Agreement was personally guaranteed by Appellees, who co-owned Southland Transportation at the time. *Id.* The Credit Agreement was a revolving line of credit and was intended to provide working capital for the trucking company based on the value of certain assets, primarily the company's accounts receivable. *Id.* at *2. Therefore, in order to receive funds from the revolving line of credit, Southland Transportation submitted daily "borrowing base certificates" to SecurAmerica that identified the amount of eligible accounts receivable maintained on its books. *Id.* at *2, (quoting *SecurAmerica Business Credit v. Schledwitz*, No. W2009-2571-COA-R3-CV, 2011 WL 3808232, at *1-2 (Tenn. Ct. App. Aug. 26, 2011)(hereinafter "*SecurAmerica I*")). "Based upon the amount listed on the borrowing base certificates, SecurAmerica would advance monies to Southland Transportation to fund its daily operations. To pay down the loan balance, Southland Transportation maintained a bank account called a 'blocked account,' into which it directed its customers to send their invoice payments. As these payments accrued in the blocked account, monies would be wired directly to SecurAmerica to be applied to the balance of the line of credit." *SecurAmerica I*, 2014 WL 3808232 at *2. In addition to the Credit Agreement, Mr. Schledwitz and Mr. Lynch both signed individual Guaranties securing the loan.

In August 2000, Appellees sold Southland Transportation to two of its employees – Michael Harrell and Michael Lucchesi. *SecurAmerica II*, 2014 WL 1266121 at *4. While the change in ownership constituted an event of default under the Credit Agreement, SecurAmerica did not accelerate the loan, nor did it release Appellees from their personal guaranties. *Id.* Instead, SecurAmerica continued to lend money to Southland Transportation pursuant to the Credit Agreement, and Appellees continued as guarantors. *Id.*

2

It was at this point that the facts began to develop in such a way to give rise to the dispute presently before us.

> Sometime between August 2000 and February 2001, Southland Transportation began falsifying the borrowing base certificates that it submitted on a daily basis in order to acquire additional funds from SecurAmerica. These borrowing base certificates were falsely inflated to make it appear that Southland Transportation had a higher eligible accounts receivable balance than it actually did, which consequently allowed it to obtain advances from SecurAmerica in excess of that provided by the Credit Agreement. Essentially, this created an out of balance debt-to-collateral ratio because monies were advanced on the basis of accounts receivable that did not exist. For example, in August 2000, $815,000 was collected from accounts receivable and put in the blocked account to pay down the loan. That amount fell to $604,000 in September; $414,000 in October; $187,000 in November; and $24,000 in December. Thus, Southland Transportation's actual accounts receivable balance was dropping precipitously; however, all the while, the line of credit remained at its maximum balance of approximately $1.5 million.
> . . . .
> [F]or some period of time, both Mr. Harrell and Mr. Reagan were aware that the borrowing base certificates had been falsified; nevertheless, SecurAmerica continued to make advances. In addition to the falsified borrowing base certificates, Mr. Harrell, with the knowledge and complicity of Mr. Reagan, began diverting accounts receivable remittances around the blocked account. Now, instead of being used to pay down the line of credit, as required by the terms of the Credit Agreement, this money was diverted to fund the day-to-day operations of Southland Transportation.

*Id*. at *4.

In *SecurAmerica II*, we remanded this case to the trial court with a roadmap consisting of five issues for the trial court to address to properly support its ruling regarding a Tennessee Consumer Protection Act (Tenn. Code Ann. §§ 47-18-101 *et. seq.*) ("TCPA") violation. We stated that the trial court must: (a) determine whether a violation of the TCPA can serve as an underlying tort for a civil conspiracy claim; (b) determine whether "the sophisticated commercial guarantors" here are properly considered "consumers" under the TCPA; (c) make specific findings as to whether the Guarantors suffered an "ascertainable loss of money or property" as a result of the alleged TCPA violation; (d) make a determination as to whether SecurAmerica's conduct was either "unfair" or "deceptive" and (e) make a finding as to whether the allegedly

3

unfair or deceptive acts "affect trade or commerce." *Id.* at *24.

On remand, the trial court found that the Guarantors are properly considered "consumers" under the TCPA and that the Guarantors suffered an ascertainable loss as a result of SecurAmerica's actions. Additionally, the trial court found that SecurAmerica's actions affected trade or commerce and were "intentionally deceptive." Finally, the trial court found that a violation of the TCPA can serve as an underlying tort for a civil conspiracy claim. Based on those findings, the trial court released the Guarantors from their guaranties. SecurAmerica now appeals.

## II. Issues

Plaintiff/Appellant presents the following issues for review:

1. Whether the "credit terms" exemption found in Tenn. Code Ann. § 47-118-111(a)(3) precludes a TCPA claim when guarantors of a credit agreement base their TCPA violation on a lender and borrower's modification of the terms of their credit agreement?

2. When parties to an existing loan no longer require accurate borrowing base certificates and bypass a blocked account, are such acts outside the TCPA's definition of trade or commerce which requires the acts at issue to affect advertising, offering for sale, lease, rental or distribution, goods, services or property?

3. May speculative testimony and unspecific proof on damages support a finding of ascertainable loss under the TCPA?

4. Should a claim under the deception prong of the TCPA be dismissed when there is no testimony that the claimant believed what was false or was misled as to a matter of fact?

5. Does the TCPA apply to highly sophisticated parties who enter into a specialized business transaction not offered generally to the consuming public?

6. Does a conspiracy claim relying on a TCPA violation fail when the violation is based on conduct that is not independently tortious?

7. Should TCPA and conspiracy claims survive when a court awards no damages because the proof is speculative and not specific?

4

8. Is it a breach of a loan agreement when the parties to the loan modify the agreement to no longer require accurate borrowing base certificates and bypass a blocked account? And does a guarantor have standing to make a breach claim on that basis?

9. May a court nullify valid and express waivers contained in a guaranty agreement if it finds breach of the underlying loan agreement as to the very matters waived in guaranty?

10. Is it a breach of the duty of good faith and fair dealing to enforce valid and express waivers contained in a guaranty?

11. Should prejudgment interest be awarded in a guaranty case?

In addition, Defendant/Appellee presents the following issues:

12. Can a violation of the TCPA serve as an underlying tort for a civil conspiracy claim?

13. Are sophisticated commercial guarantors "consumers" protected under the TCPA?

14. Did Appellees suffer an ascertainable loss of money or property as a result of the alleged TCPA violation?

15. Was the conduct of Southland and SecurAmerica deceptive or unfair?

16. Did the allegedly unfair or deceptive conduct "affect trade or commerce?"

17. What terms of either the Secured Revolving Credit Agreement or the guarantees were breached?

18. How do the continuing nature of the guarantees, or the express waivers contained therein affect the obligations of the parties in this case?

19. Did the trial court consider this Court's holding in *Transouth Mortgage Corp. v. Keith*, 1985 WL 4677 (Tenn. Ct. App. 1985)

5

when ruling that the Appellees be released from their obligations under their respective guarantees?

### III. Standard of Review

In nonjury cases, this Court's review is *de novo* upon the record of the proceedings in the trial court, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel,* 919 S.W.2d 26, 35 (Tenn. 1996).

### IV. Analysis

The trial court's decisions in this case rest first on its finding that SecurAmerica, through the actions of its president, violated the Tennessee Consumer Protection Act. Accordingly, we begin with the issues concerning the TCPA. As we stated in *SecurAmerica II*:

> The TCPA was enacted to provide statutory remedies beyond common-law fraud actions for consumers and legitimate business enterprises victimized by unfair or deceptive business acts or practices that were committed in Tennessee in whole or in part. *See* Tenn. Code Ann. § 47-18-102; *Tucker v. Sierra Builders,* 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). The TCPA applies to any "act or practice which is unfair or deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27). The TCPA's provisions, however, are limited to those actions "affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47–18–104(a), (b); *see also Pursell v. First American Nat. Bank,* 937 S.W.2d 838, (Tenn. 1996) (limiting violations of the TCPA to conduct affecting trade or commerce). A "deceptive" act or practice is "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as a matter of fact." *Tucker,* 180 S.W.3d at 116 (citations omitted). An act or practice may be deemed unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Id.* at 116-17 (citing 15 U.S.C. § 45(n)). Because the TCPA is remedial, courts have determined that it should be construed liberally in order to protect the consumer. *Tucker,* 180 S.W.3d at 115. In order to recover under the TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act; and (2) that the

6

defendant's conduct caused an "ascertainable loss of money or property...." *Tucker,* 180 S.W.3d at 116 (quoting Tenn. Code Ann. § 47–18–109(a)(1)); *see also Cloud Nine, L.L.C. v. Whaley,* 650 F.Supp.2d 789, 798 (E.D. Tenn. 2009) ("plaintiffs asserting claims under the [TCPA] are required to show that the defendant's wrongful conduct proximately caused their injury").

*SecurAmerica II*, 2014 WL 1266121, at *23 (internal footnotes omitted).

With respect to the Tennessee Consumer Protection Act, the role of this Court in construing statutes is to ascertain and give effect to legislative intent. *Wilson v. Johnson County*, 879 S.W.2d 807, 809 (Tenn. 1994). "Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Pursell v. First Am. Nat. Bank*, 937 S.W.2d 838, 840 (Tenn. 1996) (citing *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993)). As the supreme court noted in *Pursell*, "the Legislature has directed that the provisions of the Consumer Protection Act be liberally construed to protect consumers and legitimate business enterprises from those who engage in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Pursell*, 937 S.W.2d at 841 (citing Tenn. Code Ann. § 47-18-102(2); *Morris v. Mack's Used Cars*, 824 S.W.2d 538 (Tenn. 1992)).

## A. Trade or Commerce

This appeal involves the interpretation of the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-102, *et seq.* Our primary objective when construing a statute is to effectuate the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). In construing legislative enactments, we presume that every word in the statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by doing so. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). In performing our statutory analysis, we observe that the legislature has directed that the provisions of the Consumer Protection Act be liberally construed to protect consumers and legitimate business enterprises from those who engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-102(2); *see also Morris v. Mack's Used Cars*, 824 S.W.2d 538 (Tenn. 1992).

SecurAmerica argues that its acts did not affect trade or commerce within the meaning of the TCPA. According to SecurAmerica:

The trial court based its erroneous finding that SecurAmerica violated the

7

TCPA on two acts: allowing [Southland] Transportation to bypass the blocked account and receive funds on inaccurate borrowing base certificates. These acts, however, did not affect the advertising, offering for sale, lease, rental or distribution of any goods, services or property . . . . The behavior of which the Guarantors complain does not fall within the TCPA's definition of trade or commerce.

Tennessee Code Annotated section 47-18-103(19) defines "trade or commerce" as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated."

In analyzing the language of the TCPA, the Tennessee Supreme Court, in *Pursell v. First American National Bank*, 937 S.W.2d 838 (Tenn. 1996), determined that "[t]he parameters of the Act . . . do not extend to every action of every business in the State. The terms 'trade or commerce' are specifically defined to limit the Act's application." *Id.* at 841. In *Pursell*, the plaintiff brought suit against First American National Bank alleging several causes of action, including a claim under the TCPA. The court determined that the alleged acts in the plaintiff's suit, which arose from a dispute over the plaintiff's re-possessed truck, did not affect trade or commerce within the meaning of the TCPA. *Id.* at 842 ("Though the definitions of 'trade or commerce' contained within the [TCPA] are broad, they do not extend to this dispute, which arose over repossession of the collateral securing the loan.").

On remand, the trial court acknowledged the definition of "trade or commerce" as set forth in Tennessee Code Annotated section 47-18-103(19). However, the trial court did not apply that definition to the facts of this case. Instead, the court looked to Tennessee Code Annotated section 47-18-111 to determine whether any of the express exemptions applied. Before analyzing exemptions, however, a determination of whether the complained-of activities fit within the definition of "trade or commerce" was necessary.[1]

While we recognize that the *Pursell* court confined its holding to the facts and circumstances of that case and did not generally exempt banking activities from the

---

[1]The trial court relied on *Beard v. Worldwide Mortgage Corp.*, 354 F.Supp.2d 789, 815 (W.D. Tenn. 2005) and *Terry v. Community Bank of Northern Virginia.*, 255 F.Supp.2d 817, 823-24 (W.D. Tenn. 2003) to hold that "[t]he TCPA has been applied to cases involving credit transactions where there are misrepresentations by defendants in the process of establishing or executing such a transaction." However, *Beard* and *Terry* were federal district court decisions on motions to dismiss, and the federal district courts did not analyze whether the complained-of actions fell within the definition of "trade or commerce."

TCPA,[2] we conclude that the court's reasoning in *Pursell* is applicable here. The actions of SecurAmerica upon which Appellees base their TCPA claims, even if considered to be unfair or deceptive, did not affect the "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated."[3] Our supreme court has

> stated many times that the most basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the Legislature. Where . . . the language contained within the four corners of a statute is plain, clear, and unambiguous, there is no room for interpretation or construction, and we must apply the words of the statute.

*Pursell*, 937 S.W.2d at 842. According to the "Second Amended Answer, Counterclaim, Third-party Claim and Cross Claim of Defendants, Karl Schledwitz and Terry Lynch," the alleged TCPA violation in this case arises from SecurAmerica's "direct and purposeful acts and … practices that substantially eroded and impaired the value of the security and collateral for a loan," "instruct[ing] … Southland … to make false and misleading, or deceptive statements and representations about the 'eligible accounts' upon which advances could be made," and "chang[ing] the course of conduct and terms of the Guaranty Agreement after the sale of Southland…" Clearly, none of these alleged activities are the "advertising" or "offering for sale, lease or rental" of "any goods, services, or property, tangible or intangible, real personal, or mixed, and other articles, commodities, or things of value wherever situated." Tenn. Code Ann. § 47-18-103(19). None of these alleged activities could be considered "distribution" of property, nor could they be "distribution" of "goods" or "services" as those terms are defined in Tennessee Code Annotated section 47-18-103 (7) or (18), respectively. Thus, the alleged acts would only be covered by the Consumer Protection Act if they are the "distribution" of "other articles, commodities, or things of value wherever situated." We fail to see how SecurAmerica's actions fit within this portion of the TCPA's definition of "trade or commerce" without substantially expanding the statute's intended meaning or application. *See Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (2003). We cannot force a construction of the statute that limits or extends its application. *See Eastman Chem. Co.*, 151 S.W.3d at 507. As did the court in *Pursell*, we acknowledge that "[t]hough the definitions of 'trade or commerce' contained within the [TCPA] are broad,

---

[2]Rather, the court approvingly cited to a law journal article demonstrating that courts in many states have interpreted consumer protection statutes to include numerous banking activities, including the extension of credit. *Pursell*, 937 S.W.2d at 842 (citing [James R. Cox,] *State Consumer Protection or Deceptive Trade Practices Statutes: Their Application to Extensions of Credit and Other Banking Activities*, 105 Banking L.J 214 (1988)).

[3]Tenn. Code Ann. § 47-18-103(19).

they do not extend to this dispute . . . ." *Pursell*, 937 S.W.2d at 842.

Additionally, we note that while Tennessee Code Annotated section 47-18-104(b)'s list of unfair or deceptive acts that constitute violations of the statute is "non-exhaustive," *see Sowards v. Grange Mutual Casualty Co.*, No. 3:07-cv-0354, 2008 WL 3164523, at *12 (M.D. Tenn. Aug. 4, 2008), it provides some direction as to the types of acts contemplated by the legislature. The alleged acts in this case look nothing like the specific list of fifty unfair or deceptive acts affecting trade or commerce contained within Tennessee Code Annotated section 47-18-104(b). Tenn. Code Ann. § 47-18-104(b). While that alone is not determinative, taken together with the aforementioned discussion of "trade or commerce," we conclude that the alleged acts do not fall within the TCPA's definition of "trade or commerce."

Because we have determined that SecurAmerica's acts did not affect trade or commerce within the meaning of the TCPA, the Guarantors' TCPA claim necessarily fails. We noted in *SecurAmerica II* that "[w]ithout a finding of a violation of the TCPA, there can be no conspiracy." *SecurAmerica II*, 2014 WL 1266121 at *39 (*citing Foster Business Park v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL 113242 (Tenn. Ct. App. Jan. 15, 2009)). Further, "without a finding of conspiracy, under the holding in *Transouth*, it appears there can be no avoidance of the obligations of the Guaranties." *Id.* at *39 (citing *Transouth Mortg. Co. v. Keith*, 1985 WL 4677 (Tenn. Ct. App. Dec. 24, 1985)). Therefore, we must reverse the trial court's determination that the Guarantors should be released from their guaranties. All other issues with respect to the Guarantors' TCPA claim are pretermitted.

### B. Prejudgment Interest and Guaranty of Validity of Collateral

Having determined that the trial court erred in releasing the Guarantors from their individual guaranties, we next consider SecurAmerica's contention that prejudgment interest should be awarded. In the first judgment, the trial court concluded that the Guarantors should be held to their personal guaranties but declined to award prejudgment interest in this case "because of the fraud on the part of Randall Reagan and SecurAmerica." In *SecurAmerica I*, we remanded the case to the trial court, in part, because the trial court provided contradictory findings regarding fraud. *SecurAmerica I*, 2011 WL 3808232 at *12. On remand, the trial court found that the Guarantors had failed to prove fraud because they could not show reliance on the alleged misrepresentations made by SecurAmerica. We affirmed the trial court's finding of no reliance in *SecurAmerica II* and stated that "[w]ithout justifiable reliance, there can be no fraud." *SecurAmerica II*, 2014 WL 1266121, at *23. SecurAmerica now argues that because there was no fraud, it is entitled to prejudgment interest.

"An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (citing *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). The purpose of prejudgment interest "is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Myint*, 970 S.W.2d at 927. In Tennessee, several principles guide trial courts in exercising their discretion to award prejudgment interest. "Foremost are the principles of equity." *Id.*; Tenn. Code Ann. § 47-14-123. The trial court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. *Myint*, 970 S.W.2d at 927. Additionally, "[t]he certainty of the plaintiff's claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest, is, as a matter of law, equitable under the circumstances." *Id.* at 928.

An award of prejudgment interest is within the purview of the trial court. *Spencer*, 880 S.W.2d at 944. While it would typically be appropriate for this Court to review the trial court's determination with respect to an award of prejudgment interest, here, the trial court must first revisit its ruling. This is now the third appeal in this case, and neither this Court nor the trial court has addressed the issue of prejudgment interest since the trial court's original judgment. While the trial court's reasoning with respect to its initial decision to decline an award of prejudgment interest is no longer valid, the trial court must still address the issue under "the principles of equity." *Myint*, 970 S.W.2d at 927; Tenn. Code Ann. § 47-14-123.

In addition to the individual guaranties, SecurAmerica requests that this Court enter judgment against Mr. Schledwitz on the Guaranty of Validity of Collateral ("GVC") in the full amount of the loan with interest at the time of trial, for $3,083,063.83. In its original judgment, the trial court held the Guarantors to their individual guaranties but released Mr. Schledwitz from the GVC based on its premise that "a Guarantor cannot foresee an amendment to a loan obligation based upon fraudulent books." SecurAmerica appealed the trial court's ruling on the GVC; however, the issue was pretermitted in *SecurAmerica I*, No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *13 (Tenn. Ct. App. Aug. 26, 2011). The trial court's subsequent judgments and this Court's decision in *SecurAmerica II* did not address the GVC. Whether Mr. Schledwitz is obligated to pay on the GVC is a question of fact for the trial court that we cannot appropriately address. While we determined in *SecurAmerica II* that Appellees failed to prove fraud, we cannot supplant the trial court's fact finding duty with respect to Mr. Schledwitz's obligation under the GVC. Accordingly, with respect to the issues of prejudgment interest the GVC, we must remand to the trial court to make factual findings and conclusions of law consistent with this opinion.

## C. Attorney's Fees

Finally, although not raised as an issue on appeal, SecurAmerica requests that this Court reinstate the trial court's original attorneys' fee award of $125,000 against each Guarantor and that it also be awarded its attorneys' fees for all three appeals and expenses since the time of the first award in an amount to be submitted to the trial court upon affidavit.

Tennessee adheres to the "American rule" for award of attorney fees. *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985). Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. *Cracker Barrell Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

In its original judgment, the trial court determined that SecurAmerica was entitled to its attorneys' fees due to the Guarantors' contractual obligation to pay "any and all costs and expenses (including attorney's fees and related expenses) incurred by [SecurAmerica] in enforcing any rights under [the Guaranties]." After we vacated the trial court's original judgment in the first appeal in this case, the trial court ruled in favor of the Guarantors on remand. The issue of SecurAmerica's attorneys' fees has not been addressed since the trial court's original judgment. However, because the issue of attorneys' fees was not raised on appeal, this is an issue more properly addressed in the trial court on remand. Therefore, we remand this case to the trial court to determine the appropriateness of and the proper amount, if any, of attorneys' fees on appeal. *See Davis v. Davis*, No. E2007-01251-COA-R3-CV, 2008 WL 2219277, at *6 (Tenn. Ct. App. May 29, 2008).

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is reversed and remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are taxed to the Appellees, Karl Schledwitz and Terry Lynch, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE